# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 5, 2010

No. 10-30345
Summary Calendar

Lyle W. Cayce
Clerk

ANNA MARIA JANUARY,

Plaintiff–Appellant,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:08-CV-785

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Anna Maria January appeals the district court's judgment affirming the Commissioner's denial of her application for Social Security disability benefits. We affirm.

**I**

January filed an application for Social Security disability benefits on account of her back and neck problems. In evaluating a disability claim, the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30345

Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work.[1]  While the claimant bears the burden of establishing her disability in the first four steps of the analysis, the burden shifts to the Commissioner at step five to show that there is other substantial work in the national economy that the claimant can perform.[2]

After a hearing, an Administrative Law Judge (ALJ)—acting for the Commissioner—determined that January was not working and that she suffered from a severe impairment, a disorder of the cervical, thoracic, and lumbar spine. After concluding that a finding of disability was not required at step three, the ALJ determined that January's residual functional capacity enabled her to perform the full range of light work as defined by Social Security regulations. This finding precluded January from returning to her previous work as a sales associate, which fell in the medium work category.  The ALJ determined, however, that under the Medical-Vocational Guidelines,[3] other substantial work existed in the national economy that January was capable of performing. Accordingly, the ALJ found that January was "not disabled" and denied her application for benefits.  This appeal followed.

---

[1] *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

[2] *Id.* at 448.

[3] 20 C.F.R. pt. 404, subpt. P, app. 2.

No. 10-30345

## II

Our review is limited to determining whether the Commissioner applied the proper legal standards and whether the denial is supported by substantial evidence in the record.[4]  Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5]  We may not reweigh the evidence or substitute our judgment for that of the Commissioner.[6]

January's two contentions on appeal revolve around the ALJ's failure to consider a box ticked by a medical consultant on her residual functional capacity evaluation.  The tick mark indicates that she suffers from a nonexertional limit on her work capacity, namely an environmental restriction prohibiting her from working around hazards such as machinery or heights.  January first argues that the ALJ's failure to mention this nonexertional limitation deprives the residual functional capacity assessment of substantial evidence, thereby invalidating it.  Though the ALJ is not always required to provide an "exhaustive point-by-point discussion" of the evidence offered in support of a disability claim,[7] it is a close call whether his failure to discuss the nonexertional limitation was error.  Assuming, arguendo, that the ALJ erred here, the error was harmless, as discussed more fully below.

---

[4] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citations omitted).

[5] *Id.* (citations omitted).

[6] *Id.*

[7] *Audler*, 501 F.3d at 448.

3

No. 10-30345

January's second contention has more merit, but ultimately fails. She argues that, in light of her nonexertional limitation, the ALJ erred in relying exclusively on the Guidelines to find she was not disabled at step five. January is correct that, as a general rule, the Commissioner may not rely exclusively on the Guidelines when the claimant suffers from nonexertional impairments.[8] That rule is subject to a substantial caveat, however, in that it does not apply when the claimant's nonexertional impairments "do not significantly affect [the claimant's] residual functional capacity."[9] Here, the ALJ looked to the Guidelines without first determining that January's environmental restriction prohibiting her from working near machinery or heights significantly compromised her capacity to perform light work. This omission is error, as we cannot determine whether his decision to utilize the Guidelines—and thus declare January "not disabled"—is based on substantial evidence.[10]

Our analysis is not at an end, however, because we must analyze whether the ALJ's error was harmless. It is well-established that "procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected."[11] We are convinced that the ALJ's error here did not affect January's substantial rights, as we agree with the district court that Social Security Ruling 85-15 forecloses January's argument that her

---

[8] *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[9] *Id.*

[10] *See Audler*, 501 F.3d at 448 ("[T]he ALJ offered nothing to support her conclusion at this step and because she did not, we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not." (citation and quotation marks omitted)).

[11] *Id.* (citation omitted).

No. 10-30345

nonexertional limitation significantly affected her capacity to perform light work. SSR 85-15 describes various environmental limitations that a person may need to avoid, such as "those involving extremes of temperature, noise, and vibration; recognized hazards such as unprotected elevations and dangerous moving machinery; and fumes, dust, and poor ventilation."[12]  The ruling also provides an example relevant here, stating that "a person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels."[13] Similarly, January's environmental limitation does not have a significant effect on the light work available to her in the national economy, and her substantial rights were not affected by the ALJ's error.

January argues that SSR 85-15 does not apply because her environmental restriction requires that she avoid *all* machinery and not just *dangerous* machinery.  This argument is based solely on the language of the residual functional capacity checklist indicating that January should "avoid all exposure" to "hazards (machinery, heights, etc.)."  We are not persuaded that the checklist language must be taken so literally.  Indeed, the medical consultant ticked another box indicating that January had "unlimited" capability to "push and/or pull" within her exertional limitations.  This capability, according to the checklist, includes the "operation of hand and/or foot controls"—actions typically associated with operating machinery.  Moreover, January testified that she occasionally drove her car, which is undoubtedly "machinery."  Most

---

[12] SSR 85-15, 1985 WL 56857, at *8 (1985).

[13] *Id.*

5

No. 10-30345

importantly, a restriction from dangerous machinery comports with the other "hazards" described in the United States Department of Labor's *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO),[14] one source from which the Commissioner may take administrative notice of work existing in the national economy.[15] Aside from "proximity to moving mechanical parts," other hazards listed in the SCO include "exposure to electrical shock"; "working in high, exposed places"; "exposure to radiation"; "working with explosives"; and "exposure to toxic, caustic chemicals."[16]   In this context, we believe that the checklist's language is shorthand for "dangerous machinery," and that SSR 85-15 is applicable. Accordingly, remand to the Commissioner would serve no purpose because January's environmental restriction does not significantly erode her potential job base at the light work level.

Finally, January contends that we are precluded from relying on SSR 85-15 because the Commissioner did not rely on it below.  Generally, we may only affirm an agency decision on the basis of the rationale it advanced below.[17]

---

[14] UNITED STATES DEP'T OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES, app. D (1993) [hereinafter SCO]; *see also* SSR 96-9p, 1996 WL 374185, at *8 (1996) ("The 'hazards' defined in the SCO are considered unusual in unskilled sedentary work [and] . . . [e]ven a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base.")

[15] 20 C.F.R. § 404.1566(d)(1).

[16] SCO, *supra* note 14, at app. D.

[17] *See Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010) ("[W]e may usually only affirm the BIA on the basis of its stated rationale for ordering an alien removed from the United States.").

No. 10-30345

However, there are exceptions to that rule, including harmless error.[18]  Here, there is "no realistic possibility that, absent the error[]," the ALJ would have reached a different conclusion.[19]

*     *     *

The judgment is AFFIRMED.

---

[18] *See id.*

[19] *Id.*