# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 13, 2025

Lyle W. Cayce
Clerk

No. 22-20418

─────────────

Stephanie Foster,

*Plaintiff—Appellant*,

*versus*

Leland Dudek, *Acting Commissioner of Social Security Administration*,

*Defendant—Appellee*.

───────────────────────────────

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2031

───────────────────────────────

Before Jones, Richman, and Ho, *Circuit Judges*.

Priscilla Richman, *Circuit Judge*:[*]

Stephanie Foster appeals the district court's final judgment affirming the Social Security Administration Commissioner's final decision denying Foster's applications for disability benefits. Because the Commissioner's final decision is supported by substantial evidence, we affirm.

───────────────────────

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20418

## I

Stephanie Foster filed applications with the Social Security Administration (SSA) claiming a period of disability, disability insurance benefits, and supplemental social security income. After initial denials, Foster requested a hearing before an administrative law judge (ALJ). The ALJ evaluated Foster's claims under the five-step analysis set forth at 20 C.F.R. § 404.1520(a)(4).[1] In relevant part, the ALJ determined at step four that Foster "ha[d] the residual functional capacity to perform sedentary work." The ALJ determined that Foster "[wa]s capable of performing past relevant work as an accounting assistant and account payable clerk" and that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." The ALJ accordingly concluded that Foster "ha[d] not been under a disability" during the relevant period and denied Foster's applications. Foster then requested a review of the ALJ's decision from the SSA's Appeals Council. The Appeals Council denied her request for review. Foster then filed a complaint in the United States District Court for the Southern District of Texas. The district judge issued an opinion on summary judgment and a final judgment affirming the Commissioner's final decision, concluding that "the [C]ommissioner's decision denying . . . Foster's claim for disability insurance [was] supported by substantial evidence."

Foster appeals, arguing that "[t]he ALJ did not reasonably find . . . Foster's persistent headaches cause[d] no limitation of her ability to work."

_____

[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

No. 22-20418

## II

Because the Appeals Council denied Foster's request for review, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[2] This court reviews the Commissioner's denial of disability benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."[3] Our standard of review "is exceedingly deferential."[4] In ascertaining whether the final decision is supported by substantial evidence, we look to see whether the evidence "is merely enough that a reasonable mind could arrive at the same decision."[5] The evidence "must be more than a scintilla," but "it need not be a preponderance."[6]

To evaluate whether a claimant is disabled, the ALJ follows a five-step analysis set forth at 20 C.F.R. § 404.1520(a)(4).[7] The ALJ proceeds through each step in sequence and, if unable to determine at a particular step whether the claimant is disabled or not disabled, proceeds to the next step in the analysis.[8] Between step three and step four, the ALJ assesses the

---

[2] *Harrell v. Bowen*, 862 F.2d 471, 474 (5th Cir. 1988) (per curiam).

[3] *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)); *see also* 42 U.S.C. § 405(g).

[4] *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam).

[5] *Webster*, 19 F.4th at 718.

[6] *Id.* (quoting *Taylor*, 706 F.3d at 602).

[7] *Id.* ("The Commissioner considers (1) whether the claimant is engaged in 'substantial gainful activity,' (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment 'meets or equals' one of the listings in the relevant regulations, (4) whether the claimant can still do his 'past relevant work,' and (5) whether the impairment prevents the claimant from doing any relevant work." (quoting 20 C.F.R. § 404.1520(a)(4))).

[8] 20 C.F.R. § 404.1520(a)(4).

claimant's "residual functioning capacity."[9]  In assessing the claimant's residual functioning capacity, the ALJ "examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records."[10]  The ALJ is instructed to assess "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence."[11]  The claimant's "subjective complaints must be corroborated at least in part by objective medical testimony."[12]  Ultimately, "[i]t is within the ALJ's discretion to determine the disabling nature of [the] claimant's pain, and the ALJ's determination is entitled to considerable deference."[13]  After making the determination regarding residual functioning capacity, at step four, the ALJ considers the claimant's assessed residual functioning capacity in relation to the claimant's "past relevant work."[14]  If the ALJ determines the claimant is still able to perform her past relevant work, she is considered "not disabled,"[15] and the inquiry ends.[16]

Foster argues that the ALJ erred in assessing her residual functioning capacity because, she alleges, the ALJ failed to consider the impact of her

---

[9] *Id.*

[10] *Webster*, 19 F.4th at 718 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

[11] 20 C.F.R. § 404.1529(a).

[12] *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

[13] *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

[14] 20 C.F.R. § 404.1520(a)(4)(iv).

[15] *Id.*

[16] *Wren v. Sullivan*, 925 F.2d 123, 125-26 (5th Cir. 1991) (per curiam) ("A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987))).

recurring headaches. She argues the ALJ "obtained no testimony from the [vocational expert]" about her headaches, and as a result, "no vocational evidence exists in this case regarding how they affect[ed] her ability to perform her past jobs." She argues the residual functioning capacity assessment "must be based on all the evidence, accurately describe all the practical effects of all the claimant's impairments, and describe her maximum ability, despite the combined effect of physical and nonexertional impairments, to perform sustained full-time work," and, when the assessment fails to do so, "it is contrary to law."

We see no error. At the hearing before the ALJ, Foster testified she experienced "chronic headaches" after undergoing surgery, as well as "swelling on the left side of [her] head where the surgery was, which cause[d] intense pressure at times." She testified she would "get dizzy," "get nauseated," and "vomit." When the ALJ asked her to describe the headaches, Foster stated the headaches were "on and off," occurred "two or three times a week," and lasted "[a]ll day." She responded affirmatively to the ALJ's questions as to whether the headaches were like migraines and whether the headaches caused her to be sensitive to light and noise. She testified that to assuage her headaches, she would "have to lay down." As part of the residual functioning capacity determination, the ALJ considered Foster's headache symptoms and concluded Foster's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." As the district court noted, the record includes "examinations [from several medical doctors who] found Foster's condition improved and her pain manageable," "medical and testimonial evidence relating to Foster's [condition] and headaches," and consideration of "aggravating factors for her pain, efficacy

of various medications, alternative treatments, and the results of CT and MRI scans."

Foster argues that the ALJ and district judge did not adequately consider testimony from Dr. Oguejiofor which, she contends, is medical evidence substantiating her subjective complaints about her recurring headaches. Dr. Oguejiofor testified that Foster "had headache syndrome following [her] surgery," that "[s]he c[ould ]not drive," and that she "ha[d] intractable episodes of headaches." However, even assuming Dr. Oguejiofor's testimony in some way corroborates Foster's subjective complaints regarding the intensity, persistence, and limiting effects of her headaches, "[t]his court may not reweigh the evidence or try the issues de novo," and any "[c]onflicts in the evidence are for the [agency] and not the courts to resolve."[17] Ultimately, there was enough evidence that a reasonable mind could arrive at the same decision as the ALJ, and, for that reason, there was substantial evidence to support the Commissioner's final decision.

*    *    *

We AFFIRM the judgment of the district court.

---

[17] *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (per curiam).